# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY ROGERS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    3:06cv1055 (MRK) |
| | : |
| MICHAEL DeJOSEPH, | : |
| | : |
| Defendant. | : |

## RULING AND ORDER

Currently pending before the Court is Mr. DeJoseph's Motion for Summary Judgment [doc. # 32]. For the reasons given below, the Court grants Mr. DeJoseph's motion.

## I.

The following forms the factual background to Mr. Rogers' Complaint [doc. # 1]. As is required on a motion for summary judgment, the Court relates the facts in the light most favorable to Mr. Rogers.

The incident underlying Mr. Rogers' lawsuit occurred in the Norwalk Superior Courthouse on May 27, 2005. Mr. Rogers had several criminal cases pending against him, and had previously received continuances in order to retain counsel. At some point on the morning of May 27, Mr. Rogers met the presiding judge in his case, Superior Court Judge William Hickey, in the halls of the courthouse, and began to speak with the judge about his case. Judge Hickey inquired as to whether Mr. Rogers had retained counsel, and Mr. Rogers stated that he had not. In fact, that same morning, Mr. Rogers went to the prosecutors' office in the courthouse to discuss the possibility of another continuance in his case for the purpose of retaining counsel. Mr. Rogers testified at his deposition

that he spoke with a female prosecutor, who agreed to give him another six-week continuance, and that Mr. DeJoseph heard the female prosecutor's assent to Mr. Rogers' request.

Later that morning in court, Mr. Rogers was informed that Mr. DeJoseph had taken over Mr. Rogers' case. Mr. Rogers then asked Judge Hickey for a six-week continuance. At that point, Mr. DeJoseph told the judge that Mr. Rogers should not receive another continuance because he had been able to post a $250,000 bond. When Mr. Rogers protested, Judge Hickey told him to "shut up." Mr. Rogers then indicated that he would be willing to plead to six years, but no more. When Judge Hickey and Mr. DeJoseph continued to ignore him, Mr. Rogers mumbled to himself, "Get your shit off." Def.'s Mot. for Summ. J. [doc. # 32], Ex. 4 (Rogers Deposition), at 27:14-20 [hereinafter Rogers Dep.]. By that, Mr. Rogers testified that he meant "[g]o ahead and continue. . . . Go ahead, yell, do what you want to do. Let me get out of this courtroom." *Id.* at 33:15-17. When Judge Hickey asked Mr. DeJoseph what Mr. Rogers had said, Mr. DeJoseph allegedly replied, "He said he 'doesn't give a fuck about this shit.'"[1] *Id.* at 27:21-23. Judge Hickey then sentenced Mr. Rogers to thirty days in jail for contempt of court.[2]

---

[1] The police report of the incident indicated that Mr. Rogers said that Mr. DeJoseph told the court, "He doesn't care about this shit." Mr. Rogers disagreed and indicated at his deposition that some mistake must have been made in the police report. Rogers Dep. at 48:18 to 50:5.

[2] The relevant portion of the hearing transcript reads:
"The Defendant: Give me seven joints and I'll take it. I'm not copping out to eighty-five percent charge. . . . I'll go do some time. I'm not giving nobody else no money to represent me for you to put me in jail anyway.
The Court: You – hey, listen. Do me a favor, shut[]up.
The Defendant: Oh.
The Court: Shut –
The Defendant: I don't need no shit. Go ahead.
Mr. DeJoseph: He said he didn't need any of this shit. That was his exact quote.
The Court: You're in contempt of court."
Def.'s Mot. for Summ. J. [doc. # 32], Ex. 3 (Hearing Transcript), at 2:8-26 [hereinafter Hearing Tr.].

Although the various participants' versions of events are relatively similar to this point, what happened next is a matter of substantial dispute. As Mr. Rogers stated at his deposition, he decided, "If I'm going to get 30 days, I'm going to earn 30 days." *Id.* at 34:12-13. According to Mr. Rogers, the following occurred: He grabbed the metal file bucket off of Mr. DeJoseph's table, lifted it up about four inches, and pushed it onto the floor, spilling the files. Several marshals then restrained Mr. Rogers and began walking him back towards the lockup when Mr. DeJoseph approached and punched Mr. Rogers in the face. Mr. Rogers then lunged forward, falling to the ground, where Mr. DeJoseph allegedly punched him again, despite the fact that the three marshals were already restraining him. As Mr. Rogers was being led out of the courtroom, he spat the blood in his mouth onto Mr. DeJoseph's papers.

Mr. DeJoseph's recollection of events differs from Mr. Rogers'. Mr. DeJoseph claims that Mr. Rogers appeared about to throw the metal file bucket at the judge, and that he feared the judge was in physical danger. In order to stop Mr. Rogers, Mr. DeJoseph hit him once in the face, and then was forced to hit him again when Mr. Rogers attacked him. Mr. DeJoseph agrees, however, that Mr. Rogers spat at him as the marshals removed him from the courtroom. Mr. Rogers explicitly denies throwing (as opposed to "pushing") the file bucket or aiming for the judge.

As a result of the altercation, Mr. Rogers suffered a split lip and a headache. The Milford Police Department investigated the incident and determined that no criminal prosecution of Mr. DeJoseph was warranted. *See* Def.'s Mot. for Summ. J. [doc. # 32], Ex. 8.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the plaintiff, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## III.

Mr. Rogers raises two claims in his Complaint; the first is a substantive due process claim under 42 U.S.C. § 1983, and the second is a state law claim for assault and battery. The Court will first address Mr. Rogers' substantive due process claim.

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (alteration in original)). "An official acts under color of state law for Section 1983 purposes when the official exercises a power possessed by virtue of state law and made possible only because the wrongdoer is cloaked with the authority of state law." *Colombo v. O'Connell*, 310 F.3d 115, 117-18 (2d Cir. 2002) (internal quotation marks omitted).

Mr. Rogers claims that Mr. DeJoseph was acting under color of state law because he was present in the courtroom, and so in a position to attack Mr. Rogers, as a result of his status as an assistant state's attorney. The Court disagrees. There is no evidence that Mr. DeJoseph invoked the power of his office or of the state in any way in order to get close to Mr. Rogers or in connection with the alleged assault. In that respect, the facts here are similar to those in *Williams v. Josephs*, No. 91 Civ. 8178 (MBM), 1993 WL 403969 (S.D.N.Y. Oct. 7, 1993), which involved a state employee's allegation that her supervisor had attempted to hit her with a stapler. As Judge Michael Mukasey observed:

> Plaintiff does not suggest, however, the Josephs performed an official duty or otherwise wielded her power as a state official to harm her. Nor does plaintiff suggest that Josephs' position at HRA enabled her to commit the tort. The only state authority involved in the alleged tort, aside from the fact that it occurred at a city agency, is that defendant Josephs was a civil servant and that the stapler she

threatened plaintiff with presumably was city property. However, if these acts are enough to amount to state action, "any employee of any state who commits a tort has potentially violated § 1983."

*Josephs*, 1993 WL 403969, at *2 (quoting *Hughes v. Halifax County Sch. Bd.*, 855 F.2d 183, 187 (4th Cir. 1988)). Also instructive is *Monsky v. Moraghan*, 950 F. Supp. 476 (D. Conn. 1997), which involved a § 1983 claim against a judge who brought his dog to the courthouse and allegedly permitted the dog to harass female visitors such as the plaintiff. The court rejected plaintiff's claim, stating,

> [T]he mere fact that Judge Moraghan is a judicial officer who is able to have his dog with him in the Courthouse only because of his official position is not sufficient to convert his acts into "state action." Absent indicia that Judge Moraghan's behavior was related to the performance of his governmental activities or to his governmental status, there is no basis for a finding that his conduct was committed under color of state authority.

*Monsky*, 950 F. Supp. at 478 (citations omitted).

Had Mr. DeJoseph used his authority as a state prosecutor in order to commit an assault, such as by using his position to gain entry to a court lockup so that he might attack a detainee, the Court's analysis would be different. However, that is not this case. As such, the cases cited by Mr. Rogers are easily distinguishable, for they all involve state actors who used or invoked their position as state officials in some instrumental way to commit the alleged violation. *See, e.g.*, *Rivera v. LaPorte*, 896 F.2d 691, 696 (2d Cir. 1990) ("[Off-duty police officer LaPorte] was carrying handcuffs issued by the New York City Department of Corrections and an 'off-duty' revolver. He identified himself as a police officer (or, according to some testimony, as a peace officer) in making the arrest, he used the handcuffs, he placed Rivera in a police car, and he accompanied him throughout the evening to the local precinct, the hospital, and central booking. Though the dispute that precipitated the arrest

was private, the response, including the arrest and the use of excessive force, was unquestionably action under color of law.").

Given the Court's determination that Mr. DeJoseph was not acting under color of state law when he hit Mr. Rogers, the Court need not address whether Mr. DeJoseph's allegedly unwarranted attack constituted a violation of Mr. Rogers' substantive due process rights. However, the Court would note in this regard that the Second Circuit has emphasized that the standard for showing a substantive due process violation is high. The Second Circuit has instructed that when challenging the actions of a government official, a plaintiff must show "not just that the action was literally arbitrary, but that it was arbitrary in the constitutional sense. Mere irrationality is not enough: 'only the most egregious official conduct,' conduct that 'shocks the conscience,' will subject the government to liability for a substantive due process violation based on executive action." *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)) (citations and internal quotation marks omitted); *see also Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999) (describing substantive due process violation as one "warranting the labels 'arbitrary' and 'outrageous'"). Whether Mr. DeJoseph's actions, even when viewed in the light most favorable to Mr. Rogers, satisfy this demanding standard is a question this Court need not, and does not, address.

Finally, in light of its disposition of Mr. Rogers' federal claim, the Court declines to exercise supplemental jurisdiction over his state claim for assault and battery. *See, e.g.*, *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward

declining to exercise jurisdiction over the remaining state-law claims.") (quotation marks omitted);

*Frey v. Maloney*, 476 F. Supp. 2d 141, 163 (D. Conn. 2007) (same). Should he wish to do so, Mr.

Rogers is free to raise that claim in the Connecticut state courts.

**IV.**

For these reasons, Mr. DeJoseph's Motion for Summary Judgment [doc. # 32] is hereby

GRANTED. **The Clerk is directed to enter judgment and close this file.**

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

**Dated at New Haven, Connecticut: March 14, 2008.**